UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMANUELE DILIGENTE, ET AL., | ) | CASE NO.1:11CV210 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| HARVARD REFUSE, INC. ET AL., | ) | ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motions for Summary Judgment of Paul Dey (ECF # 56), Marilyn Duszyanski, Ralph Farragone, Cheryl Harris and Lois Henlsy (ECF # 57), Village of Cuyahoga Heights (ECF # 59), Jack Bacci (ECF # 60), and Todd Bloam and Renato Contipelli (ECF # 61). For the following reasons, the Court grants, in part, Defendants' Motions on all Plaintiffs' federal claims and declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims.

On January 28, 2011, Plaintiffs Emanuele Diligente and Spadichi, Inc. ("Plaintiffs") filed their Complaint with this Court naming multiple Defendants. The Complaint alleges that a neighboring company moved a significant amount of earth on property bordering Plaintiffs, creating an unreasonable flow of water off the adjacent property and onto Plaintiffs' property. Defendant Village of Cuyahoga Heights ("Cuyahoga Heights") allowed the adjacent neighbor company to redirect riparian flow by changing the grade of the neighboring property. Cuyahoga Heights permitted the construction of catch basins and storm sewers on Plaintiffs' property. The

1

plan for the catch basins was reviewed and approved by Paul Dey, an engineer for Cuyahoga Heights and Donald G. Bohning & Associates, an engineering consulting company working for Cuyahoga Heights via a contract between them. As a result, Plaintiffs allege there is an unreasonable water flow from Defendants' property onto Plaintiffs' property.

Plaintiffs' Complaint further alleges that Cuyahoga Heights is a largely white community while Plaintiffs' customers are overwhelmingly African-American. According to Plaintiffs, Jack Bacci, Mayor of Cuyahoga Heights, used racially derogatory terms when he informed Plaintiffs he didn't want African-Americans coming into Cuyahoga Heights on a regular basis. In a similar vein, Councilperson Bloam also used racially disparaging language when criticizing Plaintiffs' business. Plaintiffs accuse Cuyahoga Heights, Bacci, and the individually-named Council members with selectively enforcing laws and ordinances against African-Americans.

Plaintiffs' Complaint further alleges that they entered into signed contracts with two clients to lease space for internet cafes. Sometime after they signed contracts with Plaintiffs, the clients backed out after being persuaded by Cuyahoga Heights officials. At the time Plaintiffs entered into the contracts with the clients, there was no city ordinance prohibiting internet cafes in Cuyahoga Heights. Bacci, and the members of Cuyahoga Heights Village Council, met with Plaintiffs' clients and convinced them to repudiate their leases with Plaintiffs. Plaintiffs further allege that Defendants also piled snow in front of Plaintiffs' driveway and Contipelli threatened Diligente with bodily harm if Diligente continued to bring in minorities. Defendants further discriminated against Plaintiffs' by interfering with Plaintiffs' right to provide public accommodation to minorities.

Plaintiffs bring this suit against the above named public officials in their official and

individual capacities.

Plaintiffs' Complaint alleges causes of action for: 1)  Tortious Interference with Contractual Relations against Defendants Cuyahoga Heights, Bacci, and the individual Council members for procuring the breach of Plaintiffs' tenants leases; 2) Trespass and Negligence against Defendants Cuyahoga Heights, Dey, Bohning, Harvard, Lojek and Bacci for damages arising from the altered flow of water from Harvard to Plaintiffs' property; 3) civil rights violations under 42 U.S.C. § 1981 against Cuyahoga Heights, Bacci and Council for violating Plaintiffs' rights to make and enforce contracts and Plaintiffs' rights to the full and equal benefit of all laws and proceedings; 4) (incorrectly labeled Count Five) civil rights violations under 42 U.S.C. § 1982 for deprivation of rights enjoyed by white citizens to purchase, lease, sell, hold and convey real and personal property;  5) (incorrectly labeled Count Six) violations of Plaintiffs' civil rights under 42 U.S.C. § 1983 to conduct business, enter into leases, gather in places of public accommodation and be free from racial discrimination; 6) (incorrectly labeled Count Seven) violation of the 42 U.S.C. § 1985 and the Ohio Constitution because two or more person conspired to deprive Plaintiffs, their tenants, prospective tenants and customers, equal protection of law, privileges and immunities under law and right to contract and gather in places of public accommodation based on race, creed or color; 7) violations of the Ohio Constitution for depriving Plaintiffs of their rights to  liberty and happiness when Defendants prohibited Plaintiffs from opening their internet café; and, 8) unlawful discriminatory practices in violation of O.R.C. §4112.02(H).[1]

---

[1] Defendants Bohning, Harvard and Lojek were previously dismissed from this case and are no longer Defendants.

**Defendants' Motions for Summary Judgment**

The Court will provide a brief summation of each of the Defendants' Motions for Summary Judgment.

**Paul Dey**

Paul Dey is the Village Engineer for Village of Cuyahoga Heights and in that capacity issued a permit for the operation of Defendant Harvard Refuse's landfill.  Plaintiffs allege Dey was negligent in issuing the permit and failing to discover that the landfill operation extended onto Plaintiffs' property.

Dey argues that Plaintiffs have failed to identify a legal duty owed them by Dey and have failed to introduce expert evidence that Dey breached a duty owed Plaintiffs.  Dey also contends he is immune from liability for actions he took as Village Engineer.  Finally, Dey contends Plaintiff's claims are time barred.

**Marilyn Duszynski, Ralph Farragone, Cheryl Harris, and Lois Henley**

Marilyn Duszynski, Ralph Farragone, Cheryl Harris, and Lois Henley, all present or former Council members of Cuyahoga Heights, move for Summary Judgment because their legislative actions are protected from liability by absolute immunity.  According to the Defendants, Plaintiffs' deposition demonstrates that the sole basis of his claims against them was their passing of legislation.  At pages 110, 113, 123-125 of Diligente's depositions, and at Plaintiffs' Answers to Interrogatories 2-5, Plaintiffs admit that the sole reason for the claims against these Defendants were their votes on legislation (i.e. passing the restrictions on internet cafes).  Furthermore, Defendants contend Plaintiffs' fail to state claims under §§1983, 1981, 1982 and 1985(3) conspiracy with the requisite specificity.  Plaintiffs do not articulate which

Constitutional Amendments Defendants have violated, fail to assert sufficient facts to support such claims, fail to carry their burden showing that their rights were clearly established and fail to oppose the affidavits of the above named Defendants, disavowing violating Plaintiffs' constitutional rights.

**Village of Cuyahoga Heights**

Cuyahoga Heights argues that municipalities are not liable under § 1983 unless an action that caused a constitutional tort is attributable to official policy. Plaintiffs have failed to identify or present evidence of a Cuyahoga Heights policy or practice that was the moving force behind an injury to Plaintiffs.

Cuyahoga Heights further contends Plaintiffs' § 1981 and § 1982 claims also must establish an unconstitutional municipal policy or practice that was the moving force behind Plaintiffs' alleged racial discrimination claim. Again, Plaintiffs have failed to identify or establish by evidence the existence of such a policy or practice.

Cuyahoga Heights also argues that Plaintiffs' § 1985(3) claim for conspiracy to violate Plaintiffs' constitutional rights fails because Plaintiffs have failed to demonstrate an underlying constitutional deprivation, lacks the requisite specificity and fails because the other named Defendants in the conspiracy are all agents of Cuyahoga Heights and therefore, cannot have conspired together as they are not "separate" persons under the intra-corporate conspiracy doctrine. Also, the claim fails for the same reasons Plaintiffs' § 1981, § 1982, and § 1983 claims fail because Plaintiffs have not identified and established a municipal policy or practice linking Defendant to a constitutional deprivation.

Finally, Cuyahoga Heights asserts immunity from liability for claims brought under Ohio

5

state law.

**Jack Bacci**

According to Bacci's Motion and supporting evidence, at no time did he discriminate against Diligente or violate his civil rights under §§ 1981, 1982, 1983 and 1985. Bacci has proffered evidence that Diligente and the leasees were all white as were all parties and witnesses involved in the internet café issues. According to the evidence presented by Bacci, one leasee, Mercer, did not lease from Plaintiffs due to business reasons and not any action by Bacci. The second leasee, Sommers, did not lease with Plaintiffs because Cuyahoga Heights passed an ordinance restricting internet cafes within a certain distance of schools or residences. Also, it is undisputed Plaintiffs have leased to an African-American church since 2010 and Plaintiffs have no evidence that Bacci discriminated against African-Americans leasing from Plaintiffs. While Plaintiffs may be able to produce off-color remarks by Bacci, Plaintiffs have no evidence of discriminatory actions by Bacci and thus, cannot show a deprivation of any constitutional right.

Bacci further argues that Plaintiffs cannot show selective enforcement by Bacci of Cuyahoga Heights' ordinances. Bacci has shown evidence that the City sends letters to all residents that Cuyahoga Heights' identifies with expired plates and Plaintiffs have failed to produce any evidence Bacci singled out Plaintiffs based on some unlawful motive. Finally, Bacci denies piling snow in front of Plaintiffs' business and has shown that as soon as Cuyahoga Heights was notified, sent out a plow to remove the snow.

**Bloam and Contipelli**

Defendants Todd Bloam and Renato Contipelli are Councilmen for Cuyahoga Heights, having been elected in January 2010. Both argue that legislators have absolute immunity from

civil rights liability for legislative acts. They also contend there are no protected class members as parties or witnesses to the internet café issue. Plaintiffs have failed to demonstrate any racially discriminatory act, motive or speech by Defendants. The lone statement that Plaintiffs allege Bloam made was that Diligente "caters to no-good, low-class people." Such a statement is not, according to Defendants, indicative of discriminatory animus based on race. Furthermore, Plaintiffs destroyed their business records during the lawsuit and cannot establish what percentage of his business is African-American customers versus white customers. Finally, Defendants have no authority to issue citations for expired licence plates, enforce ordinances and never sent a letter to Plaintiffs regarding the expired licence plates or piled snow in front of Plaintiffs' establishment.

All Defendants alleged to have violated Plaintiffs' constitutional rights submitted affidavits denying any discriminatory motive or conduct.

In response to the evidence and arguments made by the above Defendants on Plaintiffs' federal claims, Plaintiffs offer only the following response in their Opposition to Summary Judgment brief:

> **C. PLAINTIFFS HAVE STATED SECTION 1981, 1982, 1983 AND 1985 CLAIMS**
> Plaintiffs have been deprived of their constitutional rights under the color of law.
> See Depositions of Plaintiff Emanuele Diligente, parts 1 and 2.

Plaintiffs filed one Opposition Brief in response to the five separate Motions for Summary Judgment by Defendants. The above three lines represent Plaintiffs' entire response to the defenses to Plaintiffs' federal claims by Defendants in their respective motions. Furthermore, Diligente's deposition exhibits cited above exceed five hundred pages.

Understandably, in their Reply briefs to Plaintiffs' Opposition brief, the Defendants' contend Plaintiff has proffered no defense to their arguments and evidence as presented in their Motions.

## **LAW AND ANALYSIS**

### **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Civil Rights Discrimination Statutes**

"Section 1981(a) ensures that all persons "shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens. Section 1982 ensures that all citizens shall have the same right ... as is enjoyed by white citizens ... to inherit, purchase, lease, sell, hold, and convey real and personal property." *Campbell v. Robb* 162 Fed.Appx. 460, 474, ( 6th Cir. 2006).

"In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that: (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin College,* 440 F.3d 350, 358 (6th Cir. 2006).

In an action brought pursuant to 42 U.S.C. § 1983, the plaintiff must prove that: (1) the challenged conduct was committed by a person acting under the color of state law, and (2) the conduct caused a deprivation of a person's rights or privileges protected by the laws or Constitution of the United States. *Summer v. Leis,* 368 F.3d 881, 888-889 (6th Cir.2004)

"To establish a claim under 42 U.S.C. § 1985(3), a plaintiff must prove: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales General Hosp.,* 40 F.3d

837, 839 (6th Cir. 1994), citing *Hilliard v. Ferguson,* 30 F.3d 649, 652-53 (5th Cir.1994). "Plaintiff must also establish that the conspiracy was motivated by a class-based animus." Johnson at 839. "This Court has held that in cases brought under section 1985(3), a corporation cannot conspire with its own agents or employees." *Id.*

"The movant must meet the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case*." Betkerur*, 78 F.3d at 1087. Defendants' have met their burden by arguing absolute immunity and offering evidence that the leasees or potential leasees of Plaintiffs' property did not break or decline leasees with Plaintiffs because of Defendants discriminatory conduct. Defendants have further established that Plaintiffs have not demonstrated that the Defendants treated non-minority citizens, similarly situated to Plaintiffs, differently than Plaintiffs and have attested that they did not engage in any discriminatory conduct. In response to Defendants' Motions, Plaintiffs make absolutely no argument and point this Court to no evidence in response. Plaintiffs make a short, conclusory statement that they were deprived of their constitutional rights and then refer the Court to over five hundred pages of Diligente's deposition testimony with no specific page reference nor argument how his deposition testimony establishes Plaintiffs' claims or creates an issue of fact.

As the Sixth Circuit in *Betkurer* held, a district court is not obligated to search the record. Also, the Court is not obligated to make Plaintiffs' arguments for them. Simply stating they were discriminated against not only fails to meet their burden to show a genuine issue for trial, it wholly fails to proffer an opposition. In fact, Plaintiffs' response is, in fact, no response.

Plaintiffs fail to specify what constitutional rights have been violated, and fail to present any evidence sufficient to create an issue of fact.  Furthermore, they offer no argument or rebuttal to Defendants' legal arguments on immunity.  Therefore, Defendants are entitled to summary judgment on all Plaintiffs' federal claims and the Court grants their Motions.

Pursuant to 28 U.S.C. § 1367(c) the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims in that all claims the Court has original jurisdiction over have been dismissed.  The United State Supreme Court has established:

> "It has consistently been recognized that [supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

Therefore, for the foregoing reasons, the Court grants Defendants' Motions for Summary Judgment (ECF # 56, 57, 59, 60 and 61) as to all Plaintiffs' federal claims, dismissing them with prejudice.  The Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims and dismisses them without prejudice.

IT IS SO ORDERED.

s/ Christopher A. Boyko<br>
CHRISTOPHER A. BOYKO<br>
United States District Judge

Dated:  September 26, 2012